**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
                                 :

**MYRON DUKES,**                            :
                                 :
                    **Plaintiff,**   :
                                 :    <u>**MEMORANDUM ORDER**</u>
          **-against-**              :    **03 Civ. 4639 (CLB)(MDF)**
                                 :
                                 :

**S.H.U. C.O. JOHN DOE #1 , ET AL.,**  :
                                 :
                    **Defendants,**  :
------------------------------------X

## <u>BACKGROUND</u>

*Pro se* Plaintiff, Myron Dukes, an inmate currently incarcerated at Southport Correctional Facility, brought this 42 U.S.C. § 1983 action alleging that, prior to being admitted to the Special Housing Unit at the Green Haven Correctional Facility ("Green Haven"), the Defendants used excessive force against him and failed to subsequently provide him with adequate medical care, in violation of his rights under the Eighth Amendment, and failed to adequately investigate and report the alleged assault, in violation of his Fourteenth Amendment right to due process. By order dated June 16, 2004, the Court dismissed the action without prejudice, finding that Dukes failed to exhaust his administrative remedies and failed to state a claim against Defendants Bodzak, Selsky, Holland, the Deputy Superintendent of Security at Green Haven, and the Director of the State Department of Health. Judgment was entered in favor of the Defendants on

June 18, 2004.

Dukes appealed this Court's judgment to the Second Circuit Court of Appeals.  On November 3, 2005, the Court of Appeals affirmed the dismissal of Dukes's complaint as against Selsky, Bodzak, and Holland[1] for failure to state a claim, vacated the Court's dismissal based on Dukes's failure to exhaust, and remanded the matter in light of five decisions on the exhaustion requirement of the Prison Litigation Reform Act ("PLRA") that it had rendered subsequent to this Court's dismissal of Dukes's action, namely, *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004); *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004); and *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004).  Specifically, the Court of Appeals directed this Court to consider on remand whether: "(1) administrative remedies were 'available' to Dukes under the PLRA; (2) defendants are estopped from asserting an exhaustion defense; or (3) special circumstances exist such that Dukes is excused from complying with exhaustion."  *Dukes v. S.H.U. C.O. John Doe, et al.*, No. 04-3759, 153 Fed.Appx. 772 (2d Cir. Nov. 3, 2005)(unpublished decision).  The Court of Appeals also specifically advised this

---

[1] Because the Deputy Superintendent of Security and the Director of the State Department of Health were terminated from the action on December 17, 2003, prior to the Court's June 16, 2004 order, they were not parties to the appeal.

Court to consider "whether Dukes's attempts to follow the grievance procedures set out in 7 N.Y.C.R.R. § 701.7 were, even if imperfect, a reasonable interpretation of these regulations." *Id.*

On February 21, 2006, the matter was reopened in this Court and subsequently referred to me for the purposes of receiving additional submissions from the parties and to issue a further Report and Recommendation. In a letter to the Court dated February 15, 2006, the Defendants renewed their motion to dismiss and, on April 25, 2006, after receiving a response from Dukes, the Court heard oral argument on the motion.

In their February 15, 2006 letter, the Defendants argue that the Court should adhere to its previous decision dismissing Dukes's complaint for failure to exhaust administrative remedies because, although Dukes did not receive a response to his appeal to the Superintendent, he was required to appeal his grievance to the Central Office Review Committee ("CORC") of the New York State Department of Corrections ("DOCS"), but failed to do so. In support of their argument, the Defendants cite this Court's decision in *Hemphill* on remand in 2004. *See* Defendants' Letter Brief dated 2/15/06. The Defendants note that, like Dukes, the Plaintiff in *Hemphill* had attempted to exhaust his administrative remedies by writing a letter directly to the Superintendent of the facility and, when he did not receive a response, failed to

appeal to the CORC. *See id*. On remand, after conducting an evidentiary hearing, this Court held, *inter alia*, that, even if writing to the Superintendent was the only remedy available to Hemphill, he failed to exhaust because he failed to appeal to the CORC. *See* Report and Recommendation of The Honorable Lisa Margaret Smith (Report and Recommendation) at 26-27 and Memorandum Order Adopting Report of Magistrate Judge Smith as the Opinion of the Court and Again Dismissing the Petition for Failure to Exhaust Administrative Remedies ("Order") (attached as Ex. I to Defendants' 2/15/06 Letter Brief). The Court held that, despite having received no response from the Superintendent, Hemphill was required to appeal to the CORC. *See* Report and Recommendation at 26-27 and Order. Here, the Defendants argue that the same result is mandated in this case. *See* Defendants' Letter Brief dated 2/15/06.

Dukes argues that his case is distinguishable from *Hemphill* because he "was unquestionably assaulted by Defendants Dimonda, Tillotson, Austin, and Mazel[l]a while in the presence of Tierney" and, subsequently, filed a timely grievance to the Superintendent and with the Inmate Grievance Program ("IGP"). Letter to Court dated March 8, 2006 at 1-2. Dukes further states that "[w]hen [he] did not receive a grievance number or any type of response from the Superintendent or the IGP he also attempted to go the extra yard by mailing a grievance appeal directly to

4

the Superintendent." *Id.* at 2. He asserts that he was prevented from fully exhausting his administrative remedies because the IGP failed to issue him a grievance number and failed to render a written response. *See id.* at 2-4. Dukes notes that, pursuant to the DOCS regulations, in order to appeal to the CORC, inmates must file their appeal with the IGP, which then forwards the appeal to the CORC. *See id.* at 3. While Dukes's argument in this regard is not entirely clear, he appears to contend that he should not have been expected to file his appeal with the IGP when it had failed adhere to the regulations by not assigning a number to his grievance and not issuing a written response. *See id.* at 3. He further notes that, in the past, he has filed nine grievances and exhausted his administrative remedies through appeals to the CORC, but only when he received a grievance number and written decision from the IGP and the Superintendent. *See id.*

In their reply letter, the Defendants further argue that, despite having received no response from the Superintendent, Dukes was required, under 7 N.Y.C.R.R. § 701.11(b)(6), to file and appeal with the CORC. *See* Defendants' Reply Letter Brief dated 3/28/06. In response to Dukes's allegation regarding the IGP's failure to assign a grievance number, the Defendants,

citing to 7 N.Y.C.R.R. § 701.7(a),[2] state, "If plaintiff is correct that he was not provided with a grievance number despite initial attempts to file with the IGP through the prison mail, he had ample opportunity to return to the grievance personnel for a number (on the existing or new grievance), even if late on a showing of mitigating circumstances." *Id*. Finally, the Defendants note that, in his letter brief, Dukes demonstrated close familiarity with the grievance regulations and requirements and assert that "[s]uch familiarity undercuts his arguments here, in the face of the express regulations." *Id*.

At the April 25, 2006 oral argument, Dukes made the following arguments: (1) the Defendants should be estopped from asserting exhaustion as a defense because, by failing to respond to his three grievances, they impeded his ability to exhaust his claims; and (2) because he never received a grievance number, he could not appeal to the CORC. *See* Trans. at 2-4. The Defendants argued that, even if Dukes's grievance was not assigned a grievance number, he never made an effort to obtain one and,

---

[2] 7 N.Y.C.R.R. § 701.7 provides, *inter alia*, in subsection (a)(1), that an inmate has fourteen calendar days from the time of the alleged incident to file a complaint with the grievance clerk. A note to this provision states, "Exceptions to this time limit or any appeal time limits may be approved by the IGP supervisor based on mitigating circumstances (e.g., attempts to resolve informally by the inmate, etc.)." 7 N.Y.C.R.R. § 701.7(a)(1). Presumably, it is this note to which the Defendants refer when they argue that Dukes had ample time to return to the grievance clerk to obtain a grievance number.

therefore, cannot use the absence of a grievance number as an excuse to justify his failure to administratively exhaust his claims. *See id* at 5-8.

## **Discussion**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under § 1983 of this title...until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In *Porter v. Nussle*, the Supreme Court made clear that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." 534 U.S. 516, 532 (2002). Administrative exhaustion is not jurisdictional, *see Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003), and, therefore, the Defendants bear the burden of proving non-exhaustion, *see Warren v. Purcell*, No. 03 Civ. 8736, 2004 WL 1970642, at *5 n.8 (S.D.N.Y. Sep. 3, 2004).

In August 2004, the Second Circuit decided a series of cases regarding the PLRA exhaustion requirement. *See Ortiz*, 380 F.3d 649; *Abney*, 380 F.3d 663; *Giano*, 380 F.3d 670; *Hemphill*, 380 F.3d 680; and *Johnson*, 380 F.3d 691. The Court recognized that, "while the PLRA's exhaustion requirement is mandatory, certain caveats apply." *Giano*, 380 F.3d at 677 (internal quotation marks and citation omitted). In *Hemphill*, the Court fashioned the

7

following three-part inquiry that district courts must undertake when a prisoner plaintiff seeks to counter a defendant's claim that the prisoner has failed to exhaust his administrative remedies: (1) whether administrative remedies were, in fact, "available" to the prisoner; (2) whether the defendants' own actions inhibiting the prisoner's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense; and (3) if the court finds that administrative remedies were available to the plaintiff and that the defendants are not estopped from asserting failure to exhaust as a defense, whether "special circumstances" exist that justify the inmate's failure to comply with the exhaustion requirements. *See Hemphill*, 380 F.3d at 686. Each prong will be addressed in turn.

## I. **Availability of Administrative Remedies**

In *Abney*, the Second Circuit held that, in some circumstances, actions of prison officials may render administrative remedies unavailable to an inmate. *See Abney*, 380 F.3d at 667. "When determining whether an administrative remedy is available, courts 'should be careful to look at the applicable set of grievance procedures, whether city, state, or federal.'" *Id*. at 668 (quoting *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003)).

DOCS has a well-established grievance process for inmates in

its correctional facilities.  *See* N.Y. Correction Law § 139; Official Compilation of Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R."), Title 7, §§ 701.1 *et seq.*  The procedure for most grievances involves a sequential three-step grievance process.  *See* 7 N.Y.C.R.R. § 701.7.  Pursuant to this process, an inmate must first file a grievance with the grievance clerk for the facility's IGP within fourteen calendar days of an alleged incident.  *See id.* at § 701.7(a)(1).  According to the regulations, at the time of receipt of an inmate's grievance, "[t]he clerk shall consecutively number and log each grievance." *Id.* at § 701.7(a)(1)(ii).  Second, within four working days of receiving a written response from the Inmate Grievance Resolution Committee ("IGRC") to the grievance, the inmate may appeal the IGRC's decision to the Superintendent of the facility by filing an appeal with the IGP clerk.  *See id.* at § 701.7(b)(1).  Third, any unfavorable disposition of the superintendent must be appealed to the CORC within four working days of receipt of the Superintendent's written response.  *See id.* at § 701.7(c).  The regulations provide that, absent any extension of the time limits, "matters not decided within the time limits may be appealed to the next step."  *Id.* at § 701.8.

In addition to the process set forth in § 701.7, DOCS also provides for an expedited procedure that inmates may utilize when making allegations of "employee harassment," which is defined in

9

the regulations as "[e]mployee misconduct meant to annoy, intimidate, or harm an inmate." *Id*. at § 701.11(a). In 2000, when Dukes filed his grievances related to the assault alleged in this case, the expedited procedure permitted inmates complaining of such harassment to first report an incident to the employee's immediate supervisor. *See id*. at § 701.11(b)(1)(2002).[3] Like § 701.7, the expedited grievance provision states that "[a]ll allegations of employee misconduct shall be given a grievance calendar number and recorded in sequence." *Id*. at § 701.11(b)(2). Thereafter, all documents submitted with the allegation must be forwarded to the superintendent of the facility, who must "promptly determine whether the grievance, if true, would represent a bona fide case of harassment." *Id*. at § 701.11(b)(2). If such a determination is made, the superintendent must then initiate an investigation and, within 12 working days of receipt of the grievance, render a decision and transmit the decision, with reasons stated, to the grievant, the IGP clerk, and any direct party of interest. *See id*. at § 701.11(b)(4)-(5). If the grievant wishes to appeal the

---

[3] In 2004, § 701.11(b)(1) was amended to require that, even when complaining of employee harassment, inmates must utilize the general procedures for filing a grievance outlined in § 701.7(a). *See* 7 N.Y.C.R.R. § 701.11(b)(1). The amended provision, however, includes a note stating that, in these cases, inmates *should* report occurrences of employee misconduct to that employee's immediate supervisor, but that this is not a prerequisite for filing a grievance with the IGP. *See id*.

10

superintendent's decision to the CORC, he must do so within four working days of receipt of the superintendent's decision. *See id*. at § 701.11(b)(7). Finally, under the expedited procedure, "[i]f the superintendent fails to respond within the required time limit, the grievant may appeal his grievance to the CORC." *Id*. at § 701.11(b)(6).

Here, given the extensive grievance process available to inmates in the custody of DOCS, it is clear that administrative remedies were originally available to Dukes as the DOCS regulations provided multiple ways in which an inmate claiming excessive force may pursue a grievance. Duke appears to have made efforts to exhaust under both §§ 701.7 and 701.11. Dukes, however, argues that prison officials' failure to respond to his grievances and failure to assign any of his grievances a grievance number rendered further administrative remedies unavailable.

The test for determining whether ordinary grievance procedures were available to an inmate is an objective test and asks whether a "'similarly situated individual of ordinary firmness' [would] have deemed them available." *Hemphill*, 380 at 688 (internal citation omitted). In *Hemphill*, the Court suggested, in a footnote, that, if Hemphill, whose sole attempt at exhaustion was to write a letter to the facility's superintendent, had written to the superintendent in a timely

11

fashion pursuant to a valid interpretation of the DOCS grievance procedures, "there might be a question as to the availability of remedies, since Hemphill received no response to his letter, and there is no indication in the record that his grievance was ever recorded, as required by DOCS regulations." *Id*. at 687 n.6 (collecting cases from other circuit courts that have held that prison officials' failure to respond to grievances renders further remedied unavailable). Courts in this district that have considered the issue have held that the failure to receive a response from either the IRGC or the superintendent does not render further administrative remedies unavailable. On remand in *Hemphill*, this Court concluded that "Hemphill was required to appeal to the CORC before filing the instant action, even in the absence of a response from the [s]uperintendent." *See* Report and Recommendation, p. 27; Order (both attached as Ex. I to Defendants' 2/15/06 Letter Brief). In *Taylor v. New York State Dep't of Corr.*, Judge Castel of this Court, when considering the IGRC's failure to respond to the inmate's grievance, stated, "I am not prepared to say that, presented with section 701.8, the Second Circuit would find that the failure of Sing Sing's IGRC to respond to plaintiff's grievance in this case – even if it were true that plaintiff received no response – made any further remedy 'unavailable.'" No. 03 Civ. 1929, 2004 WL 2979910, at *7 (S.D.N.Y. Dec. 22, 2004). In light of § 701.8, Judge Castel held

12

that "[e]ven if the IGRC failed to respond, a similarly situated individual reading the rules would understand that the failure to respond permitted him to appeal to the next level." *Id*.

Here, if the IGRC and the Superintendent had properly processed Dukes's grievances and had only failed to render decisions, further administrative remedies may not be considered "unavailable" since the regulations governing both the general and expedited grievance procedures make clear that, in the absence of a decision from either the IGRC or the Superintendent, an inmate may appeal to the next level. *See* 7 N.Y.C.R.R. §§ 701.8 and 701.11(b)(6). According to Dukes, however, none of his grievances were ever recorded and assigned grievance numbers as required by §§ 701.7(a)(1)(ii) and 701.11(b)(2). While the Defendants do not dispute that Dukes filed the grievances that he claims to have filed, they have not conceded that his grievances were never assigned grievance numbers. *See* Trans. at 5-6. Presumably, grievances are identified by prison officials by their grievances numbers, just as cases in federal court are identified by their docket numbers. Thus, if officials did, in fact, fail to assign grievance numbers to Dukes's grievances, any further remedies, i.e., an appeal to the CORC, may have been unavailable because, without a grievance number, there would be no grievance to review on an appeal.

From the current record, this Court is unable to determine

13

whether an appeal to the CORC was unavailable to Dukes due to prison officials' failure to assign grievance numbers to his grievances.  First, there is not enough evidence in the record to make a factual determination as to whether officials did, in fact, fail to properly process Dukes's grievances and, if so, why they failed to do so.  Second, even if such a determination could be made at this juncture and it was found that Dukes did not receive grievance numbers, the Court would still be unable to determine whether an inmate is able to pursue an appeal to the CORC without a grievance number.  Without further evidence, this Court cannot determine whether the CORC would entertain an appeal on a grievance that does not bear a grievance number.  If not, then any appeal to the CORC would be futile.  Another question that is relevant to the issue of availability in this case is how inmates are notified of their grievance numbers when they submit their grievances through the prison mail system, as Dukes did in this case.  For instance, if inmates are not given a grievance number until they are notified of a hearing date or receive a final decision, then the failure to assign a grievance number arguably may not render further remedies unavailable given that the regulations expressly provide inmates with the opportunity to appeal to the next level in the absence of a decision from the IGRC or the superintendent.

## II. Estoppel

The second prong of the *Hemphill* analysis requires courts to consider whether, under the circumstances, defendants are estopped from asserting failure to exhaust as an affirmative defense. *See Hemphill*, 380 F.3d at 686. Estoppel may apply when "prison officials inhibit an inmate's ability to utilize grievance procedures," *Abney*, 380 F.3d at 667 (citing *Ziemba v. Wezner*, 366 F.3d 161, 163-64 (2d Cir. 2004)). Defendants also may be estopped from asserting an exhaustion defense "where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies." *Id.* (citing *Hemphill*, 380 F.3d 680). Dukes asserts that the Defendants should be estopped from raising an exhaustion defense because their failure to properly process and respond to his grievances impeded his ability to pursue further administrative remedies. In *Taylor*, this Court considered whether prison officials' failure to respond to an inmate's grievance serves to estop defendants from asserting failure to exhaust as a defense. The Court held that, in light of § 701.8, prison officials' failure to timely advance an inmate's grievance did not prevent him from seeking his administrative remedies. *Taylor*, 2004 WL 2979910, at *7-*8. As explained above, this case is distinguishable from *Taylor* because, according to Dukes, in addition to not responding to his grievances, IGP personnel

15

failed to assign grievance numbers to his grievances. Because the Court is unable to determine whether prison officials, in fact, failed to assign grievance numbers to Dukes's grievances and the record does not contain enough evidence concerning the facility's procedure for processing grievances and assigning grievance numbers or the CORC's procedure for handling appeals of inmate grievances, the Court cannot fully consider the estoppel issue at this time.

**III. Special Circumstances**

In *Giano*, the Second Circuit held that "there are 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." 380 F.3d at 676. What constitutes justification in the PLRA context is "determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Id*. at 678. In *Giano*, the "special circumstance" that justified Giano's failure to grieve in the required manner was his reasonable interpretation of the DOCS regulations as they related to whether decisions or dispositions of disciplinary proceedings are grievable. *See id*. at 678-79.

Here, the issue for the Court to decide on remand is "whether Dukes's attempts to follow the grievance procedures set out in 7 N.Y.C.R.R. § 701.7 were, even if imperfect, a reasonable interpretation of these regulations." *Dukes*, 153 Fed.Appx. 772. Specifically, the Court must determine whether Dukes's failure to appeal to the CORC in the absence of a grievance number and a decision from the superintendent on his appeal is a reasonable interpretation of the procedures set forth in § 701.7. Again, because the facility's procedure for processing grievances and assigning grievance numbers is relevant to this issue, the Court will be able to more adequately resolve the special circumstances issue with the benefit of further evidence from the parties.

Accordingly, the Defendants will be given an opportunity to present sufficient evidence to the Court at an evidentiary hearing, which will be held on Thursday, August 17, 2006 at 10:00 A.M. The Defendants are instructed to submit evidence in the form of testimony from officials from Green Haven and the CORC pertaining to: (1) whether any of Dukes's grievances related to the assault alleged in the instant lawsuit were assigned grievance numbers and, if not, why; (2) Green Haven's procedures for processing grievances and assigning grievance numbers; and (3) how CORC processes appeals from superintendent decisions and whether there is a procedure in place for handling appeals that do not have grievance numbers. Upon conclusion of the hearing,

17

counsel will have 3 business days to submit further arguments, immediately after which I will submit my Report and Recommendation to Judge Brieant in compliance with his February 21, 2006 order.

## Conclusion

It is hereby ordered that the parties appear before the undersigned on Thursday, August 17, 2006, at 10:00 A.M. for an evidentiary hearing on the issue of whether prison officials failed to assign grievance numbers to Dukes's grievances and, if so, whether that rendered further administrative remedies unavailable, estopped the Defendants from asserting non-exhaustion, or justified Dukes's failure to appeal to the CORC. SO ORDERED.

_____
Mark D. Fox
United States Magistrate Judge

White Plains, New York
Date: June 12, 2006

Copies of the within order have been sent to the following:

The Honorable Charles L. Brieant, U.S.D.J.

Myron Dukes
93-A-5735
Southport Correctional Facility
P.O. Box 2000
Institution Road
Pine City, New York 14871

Jeffrey P. Metzler
Office of the Attorney General of the State of New York
120 Broadway
24th Floor
New York, New York 10271